# Exhibit "B"

# COMMONWEALTH OF VIRGINIA



RICHMOND CITY CIRCUIT COURT
Civil Division
400 NORTH 9TH STREET
RICHMOND VA 23219
(804) 646-6506

Summons

To: COTERIE INSURANCE AGENCY LLC
SERVE: CORPORATION SERVICE
COMPANY
REGISTERED AGENT
100 SHOCKOE SLIP, 2ND FLOOR
RICHMOND VA 23219

Case No. 760CL26000208-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Friday, January 09, 2026

Clerk of Court: EDWARD F JEWETT

by _____
(CLERK/DEPUTY CLERK )

Instructions:

Hearing Official:

Attorney's name:    EDWARDS, DANIEL LESTER S
804-649-7545

V I R G I N I A :

IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

GOLDEN FOODS MARKET, INC.

       Plaintiff,

v.                                       Case No. CL26000208RBC

BENCHMARK INSURANCE COMPANY

**Serve: Corporation Service Company**
      **Registered Agent**
      **100 Shockoe Slip, 2nd Floor**
      **Richmond, VA 23219**

and

COTERIE INSURANCE AGENCY LLC          THIRD PARTY SERVICE
                                         THE MARSTON AGENCY, INC.

**Serve: Corporation Service Company**
      **Registered Agent**
      **100 Shockoe Slip, 2nd Floor**
      **Richmond, VA 23219**

       Defendants.

## COMPLAINT

COMES NOW the Plaintiff, Golden Food Mart, Inc. a/k/a Golden Foods Market, Inc. (the "Insured"), by counsel, and for its Complaint against the Defendants, Benchmark Insurance Company ("Benchmark") and Coterie Insurance Agency LLC ("Coterie") (collectively, the "Defendants"), states as follows:

## PARTIES

1.    The Insured is a corporation organized under the laws of the Commonwealth of Virginia with its principal place of business at 1401 Chestnut Street, Richmond, Virginia 23222.

1

2.    Benchmark is a corporation organized under the laws of the State of Kansas and is authorized to transact business in Virginia. Benchmark's principal place of business is 150 Lake Street West, Mayzata, MN 55391.

3.    Coterie is a limited liability company organized under the laws of the State of Delaware and is authorized to transact business in Virginia. Coterie's principal place of business is 181 South Riverheath Way, Suite 1200, Appleton, Wisconsin 54915.

## JURISDICTION AND VENUE

4.    Pursuant to Virginia Code § 17.1-513, the City of Richmond Circuit Court has original and general jurisdiction over this suit.

5.    Pursuant to Virginia Code § 8.01-262.2, the City of Richmond Circuit Court is a permissible forum. There is practical nexus to the City of Richmond, as the Property is located within in the City of Richmond, and it is the locality in which the cause of action arose. Additionally, the Defendants each have registered agents in the City of Richmond.

## FACTUAL BACKGROUND

6.    This is a breach of contract action arising out of Defendants' breaches of the parties' Business Owners Insurance Policy Agreement, Policy No. CBB-00048499-01 (the "Policy"). True and accurate copies of the Policy provisions cited herein are attached hereto as **Exhibit A**.

7.    The Policy was issued on September 14, 2023.

8.    Benchmark was the underwriter for the Policy and retained Coterie to serve as the program and claims administrator under the Policy.

9.    The Policy provides coverage for "direct physical loss of or damage to Covered Property at the premises described in the Declarations . . . ." *See* Policy at BP-00-03-07-13, Business Owners Coverage Form at § I(A)(1).

10. The Covered Property is described as 1401 Chestnut Street, Richmond, Virginia 23222 (the "Property").

11. On or about February 22, 2024, a storm partially destroyed the roof of the Property, resulting in water intrusion into the Property (the "Storm Claim").

12. The Insured timely reported this claim to Defendants and sought coverage under the Policy.

13. On or about February 22, 2024, the Insured hired a roofing contractor to install a tarp over the Property's roof to prevent further water intrusion.

14. Three months later, on or about May 13, 2024, Defendants sent a letter to Plaintiff denying coverage under the Policy, even though such damage was explicitly covered under the Policy's terms. In so doing, Defendants breached the Policy. Also, in doing so, Defendants engaged in bad faith unfair claims practices.

15. At some point between March 2024 and September 2024, and unbeknownst to the Insured, Defendants unilaterally canceled the Policy, despite the Insured making each premium payment due under the Policy.

16. In unilaterally cancelling the Policy, Defendants breached the Policy by failing to provide the Insured with the cancellation notice required by the Policy. *See* Policy at BP-01-32-03-20, Virginia Changes at § 3(1)(A). Defendants further breached the Policy by failing to explain to the Insured that not only was the Policy cancelled, but it would also not be renewed for a subsequent year of coverage.

17. This unilateral cancellation without notice was a breach of the Policy. Furthermore, it was a bad faith practice by the Defendants.

18. On or about October 27, 2024, water intruded through the roof of the Property, despite the Insured's diligent efforts to repair the roof after Defendants rejected the Storm Claim. The water intrusion caused an electrical fire which destroyed the Property (the "Fire Claim").

19. The Richmond Fire Department responded to the fire on October 27, 2024, but was unable to stop the complete loss to the Property as a result of the fire.

20. Under the Policy, "when the fire department is called to save or protect Covered Property from a Covered Cause of Loss, [Defendants] will pay up to $2,500.00 for service at each premises described in the Declarations." *See* Policy at BP-01-32-03-20 § (A)(1)(a).

21. The Insured timely reported the Fire Claim to Defendants and sought coverage under the Policy, as the Insured did not receive notice from the Defendants that the Policy had been cancelled and was not renewed for a subsequent year of coverage.

22. The Defendants denied coverage, ostensibly under the theory that their unilateral, and unnoticed cancellation of the Policy was proper.

23. As a result of the Defendants multiple breaches of the Insurance Policy, and bad faith handling of both the Storm Claim and the Fire Claim, the Insured has suffered damages of no less than $300,950.00.

<u>The Insured is Entitled to Coverage for the Storm Claim</u>

24. Defendants issued the Policy to the Insured, which covered the period of time during which the Storm Claim was made by the Insured.

25. The Insured paid Defendants a substantial premium for coverage under the Policy.

26. Pursuant to the Policy, Defendants agreed to insure the Insured.

27. Specifically, the Policy states: "Covered Property includes Buildings . . . meaning the buildings and structures as the premises described in the Declarations" and that Defendants

4

would pay for loss of or damage to the interior of the building if "the building or structure fire sustains damage by a Covered Cause of Loss to its roof or walls through which rain . . . enters." *See* Policy at BP-00-03-07-13 §§ 1(A)(1) and (1)(A)(4).

28.    The Storm Claim qualifies as covered property damage under the Policy. Consequently, the Insured is entitled to coverage under the Policy. As a result, Defendant had a duty to cover all repairs associated with the Storm Claim.

<u>The Insured is Entitled to Coverage for the Fire Claim</u>

29.    Defendants failed to provide the notice required under the Policy before unilaterally cancelling the Policy at some point between February and October 2024.

30.    As such, the Insured continued to pay premiums under the Policy under the belief that the Policy was in effect, and that the Policy would be renewed for a subsequent year of coverage between September 14, 2024 – September 14, 2025. This renewed policy would have been in effect, as the Insured reasonably believed, at the time of the Fire Claim.

31.    Defendants' failure to provide notice of cancellation of the Policy was both a breach of the Policy, and a breach of the duty of good faith and fair dealing inherent in the Policy.

32.    Had Defendants properly noticed the cancellation and nonrenewal of the Policy to the Insured, the Insured would have been able to procure insurance from a different carrier.

33.    Importantly, the water intrusion which led to the Fire Claim was a direct and proximate result of Defendants denial of coverage for the Storm Claim.

34.    Had the Defendants honored the Insured's Storm Claim in February of 2024, as was their contractual obligation, then the roof of the Property could have been fixed, and the Fire Claim would not have occurred.

5

## COUNT 1: BREACH OF CONTRACT

35.     The Insured incorporates by reference, paragraphs 1-34 of the Complaint as though fully set forth herein.

36.     The Policy is an enforceable contract between the Parties.

37.     The Insured fully performed under the Policy by paying the Policy premiums. The Insured also timely reported the Storm Claim and the Fire Claim to Defendants and cooperated with Defendants in this regard.

38.     Defendants breached the Policy when they denied coverage benefits to the Insured for the Storm Claim and the Fire Claim, even though the Insured was entitled to benefits under the Policy and had fully performed under the Policy.

39.     Defendants also breached the implied duties of good faith and fair dealing inherent to the Policy. Through their handling of the Insured Storm Claim and Fire Claim, Defendants acted unfairly and in bad faith by engaging (without limitation) in the following conduct:

    a.  Failing to conduct a good faith, reasonable investigation of the Storm Claim prior to denying coverage;

    b.  Failing to explain to the Insured the bases for its denial of the Storm Claim;

    c.  Arbitrarily and unreasonably refusing to pay Plaintiff's Storm Claim.

    d.  Failing to attempt in good faith to make a prompt, fair, and equitable settlement of Plaintiff's Storm Claim, for which liability has become reasonably clear;

    e.  Failing to provide the required notice to the Insured that the Policy was cancelled and would not be renewed.

6

40.    Despite several requests from the Insured, Defendants failed to provide the Insured a meaningful explanation regarding the grounds for Denial of the Storm Claim. This lack of transparency undermines the Insured's right to understand the basis for denial.

41.    Likewise, Defendants failed to properly notify the Insured that the Policy had been cancelled and was not subject to renewal following the Storm Claim.

42.    The Insured's lack of notice as to the cancellation and nonrenewal of the Policy led the Insured to reasonably believe that it had coverage from the Defendants in October 2024.

43.    Notwithstanding Defendants' failure to provide notice of cancellation and nonrenewal, had Defendants honored the Policy and issued payment for the Storm Claim, the Fire Claim would not have occurred.

44.    As a direct and proximate result of the Defendants multiple breaches of the Policy, the Insured incurred damages in the amount of $300,950.00. This amount is comprised of the cost to rebuild the Property and the amount Defendants are obligated to remit to the Insured under the Policy following a fire department emergency response.

45.    Plaintiff is also entitled to its costs and attorney's fees pursuant to Virginia Code § 38.2-209 as Defendants' failure to act in good faith in refusing to resolve Plaintiff's Storm Claim and Fire Claim has required Plaintiff to file the present lawsuit to determine Defendants' obligation to pay.

## CONCLUSION

WHEREFORE, Golden Food Mart, Inc. a/k/a Golden Foods Market, Inc. respectfully requests that this Court award it judgment against Benchmark Insurance Company and Coterie Insurance, jointly and severally, as follows: compensatory damages in an amount of $300,950.00; all costs and attorney's fees incurred pursuant to Virginia Code § 38.2-209; interest at the judgment

rate from February 22, 2024 until paid; and for such other and further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Trial by jury is hereby demanded as to all issues so triable.

Dated: January 7, 2026

                            Respectfully submitted,

                            GOLDEN FOOD MART, INC. A/K/A GOLDEN
                            FOODS MARKET, INC.

                            By: *Daniel-Lester S. Edwards*
                                      Counsel

William W. Tunner, Esq. (VSB No. 38358)
Daniel-Lester S. Edwards, Esq. (VSB No 99337)
*Thompson*McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, VA 23219
Phone: (804) 649-7545
Fax: (804) 780-1813
Email: wtunner@t-mlaw.com
Email: dledwards@t-mlaw.com
*Counsel for Golden Food Mart, Inc. a/k/a Golden Foods Market, Inc.*

COTERIE CW SIG 05 19

# Benchmark Insurance Company
150 Lake Street West
Wayzata, MN 55391
800-283-0622

**INSURANCE POLICY**

Coverage afforded by this policy is provided by the company (insurer) and named in the Declarations.

In Witness Whereof, the company has caused this policy to be executed and attested, but this policy shall not be valid unless signed by a duly authorized representative of the company.

**Secretary**

**President**



Account ID: 43186                    Policy Issued: 9/14/2023 7:30:24 AM UTC                    CTB CW NONCDEC 07 20

 **coterie**

**Benchmark Insurance Company**
150 Lake Street West, Wayzata, MN 55391
1.800.283.0622

Licensed Producer:
Kc James Collins
Mylo, LLC
kc.collins@choosemylo.com

Program Administrator:
Coterie Insurance Agency, LLC
P.O. Box 42368
Blue Ash, OH 45242

## BUSINESSOWNERS POLICY DECLARATIONS

*In return for the payment of premium and subject to all the terms of this policy, we agree to provide you insurance as stated in the policy.*

**NAMED INSURED** (Business or Individual)
**Golden Foods Market, Inc.**

**DBA**

**SECOND NAMED INSURED**

**BUSINESS ADDRESS**
**1401 Chestnut St , Richmond, VA 23222-5124**

**EMAIL**
asnanahmed2007@icloud.com

**BUSINESS DESCRIPTION**
**Convenience Food Stores**

**CONTACT NAME**
**Mahlia   Ahmed**

**STREET ADDRESS**
**1401 Chestnut St   , Richmond, VA 23222-5124**

**EMAIL**
asnanahmed2007@icloud.com

**PHONE NUMBER**
**(804)502-0160**

| UNDERWRITING COMPANY | POLICY NUMBER | POLICY PERIOD | POLICY PREMIUM |
|---|---|---|---|
| Benchmark | CBB-00048499-01 | 09/14/2023 - 09/14/2024 | $5,609.00 |

*Policy effective period from 12:01AM of start date (or time of purchase if purchased on the same day) to 12:01AM** of end date (standard time at the business address shown above) Notwithstanding the foregoing, no insurance applies prior to the time of Application on the first day of the Policy Period.
*Exceptions: 12:00 PM in Michigan and North Carolina

CTB CW NONCDEC 07 20

Account ID: 43186                    Policy Issued: 9/14/2023 7:30:24 AM UTC                    CTB CW NONCDEC 07 20

Additional Insured – Designated Person Or Organization Endorsement has been attached to this policy, the additional insured listed here will have the benefit set forth in the endorsement with respect to their insurable interest:

| PREMISE NUMBER | BUILDING NUMBER | PREMISE ADDRESS: |
|---|---|---|
| 1 | 1 | 1401 Chestnut St , Richmond, VA 23222-5124 |

| PREMISE NUMBER | BUILDING NUMBER | LIENHOLDER NAME/MORTGAGEE NAME: | LIENHOLDER ADDRESS/MORTGAGEE ADDRESS: |
|---|---|---|---|
| 1 | 1 | | , , |

## Section I – Property

| PREMISE NUMBER | BUILDING NUMBER | BUILDING LIMIT OF INSURANCE | BUSINESS PERSONAL PROPERTY LIMIT OF INSURANCE | ACTUAL CASH VALUE OF BUILDING OPTION (YES OR NO) | SEASONAL INCREASE PERCENTAGE – BUSINESS PERSONAL PROPERTY | BUILDING LIMIT – AUTOMATIC ANNUAL INCREASE (PERCENTAGE) |
|---|---|---|---|---|---|---|
| 1 | 1 | $600000.00 | $30,000 | No | N/A | 8% |

| X | Optional Coverage – Equipment Breakdown Protection Coverage (applicable only if "X" is shown) |
| X | Businessowners Personal Property Enhancement: Gold |

## Property Coverage Deductibles

| PROPERTY DEDUCTIBLE | WINDSTORM OR HAIL % DEDUCTIBLE | OPTIONAL COVERAGE DEDUCTIBLE (OTHER THAN EQUIPMENT BREAKDOWN PROTECTION COVERAGE |
|---|---|---|
| $1,000.00 | Separate % deductible does not apply | $500.00 |

CTB CW NONCDEC 07 20

Account ID: 43186                    Policy Issued: 9/14/2023 7:30:24 AM UTC                    CTB CW NONCDEC 07 20

## Coverage Information

Repeat coverage for each building combination

| | Property Coverages – Increased limits of insurance and extended number of days (Limits are non-stackable across premises and an increased limit only applies to a coverage when a limit is shown below for that coverage.) | | |
|---|---|---|---|
| PREMISE NUMBER | PROPERTY COVERAGES | LIMIT OF INSURANCE/EXTENDED NUMBER OF DAYS | DEDUCTIBLE |
| 1 | Accounts Receivable (on premises/off premises) | $10,000/5,000 | $1,000 |
| 1 | Business Personal Property Temporarily In Storage Units | $10,000 | $1,000 |
| 1 | Fire Department Service Charge | $2,500 | No Deductible |
| 1 | Increased Cost of Construction | $10,000 | |
| 1 | Outdoor Property | $2,500 | $1,000 |
| 1 | Outdoor Signs | $1,000 | $500 |
| 1 | Preservation of Property | $5,000 | |
| 1 | Valuable Papers and Records (on/off premises) | | $1,000 |

| OTHER POLICY COVERAGES | LIMIT OF INSURANCE/EXTENDED NUMBER OF DAYS | DEDUCTIBLE |
|---|---|---|
| Business Income – Extended Number of Days for Ordinary Payroll Expenses | Not Purchased | N/A |
| Business Income from Dependent Properties | $5,000 | $1,000 |
| Civil Authority | Actual Loss Sustained - 4 weeks | No Deductible |
| Electronic Data | $10,000 | $1,000 |
| Interruption of Computer Operations | $10,000 | $1,000 |
| Employee Dishonesty | Not Purchased | $500 |
| Extended Business Income – Extended Number of Days | Actual Loss Sustained - 60 Days | N/A |
| Fire Extinguisher Systems Recharge Expense | $5,000 | No Deductible |
| Forgery or Alteration | $2,500 | $500 |
| Key and Lock Replacement | N/A | |
| Money and Securities (on/off premises) | $5,000 | $500 |
| Money Orders and Counterfeit Money | $1,000 | |
| Newly Acquired or Constructed Property | $250,000 | |
| Personal Effects | $2,500 | |
| Personal Property Off-Premises | $10,000 | |

Account ID: 43186                    Policy Issued: 9/14/2023 7:30:24 AM UTC                    CTB CW NONCDEC 07 20

Section II – Liability

| Each paid claim for the following coverages reduces the amount of insurance we provide during the applicable annual period. Please refer to Section II – Liability in the Businessowners Coverage Form and any attached endorsements. | |
|---|---|
| **Liability Coverages** | |
| Liability and Medical Expenses (per occurrence limit) | $1,000,000 |
| Damage to Premises Rented To You (any one premises) | $50,000 |
| Medical Expenses (per person) | $5,000 |
| Other than Products / Completed Operations Aggregate | $2,000,000 |
| Products / Completed Operations Aggregate | $2,000,000 |
| | |
| **Optional Liability Coverage (As listed and Premium Paid):** | |
| | |
| Liquor Liability (each common cause/aggregate) | $1,000,000 / $2,000,000 |
| **Policy Premium:** | $5,609.00 |
| | |
| Policy Premium includes Premium Taxes, Surcharges, and Fees | |

BUSINESSOWNERS
BP 00 03 07 13

# BUSINESSOWNERS COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

In Section II – Liability, the word "insured" means any person or organization qualifying as such under Paragraph **C.** Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Paragraph **H.** Property Definitions in Section I – Property and Paragraph **F.** Liability And Medical Expenses Definitions in Section II – Liability.

## SECTION I – PROPERTY

### A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

1. **Covered Property**

   Covered Property includes Buildings as described under Paragraph **a.** below, Business Personal Property as described under Paragraph **b.** below, or both, depending on whether a Limit Of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under Paragraph **2.** Property Not Covered.

   a. **Buildings**, meaning the buildings and structures at the premises described in the Declarations, including:

      (1) Completed additions;

      (2) Fixtures, including outdoor fixtures;

      (3) Permanently installed:

         (a) Machinery; and

         (b) Equipment;

      (4) Your personal property in apartments, rooms or common areas furnished by you as landlord;

   (5) Personal property owned by you that is used to maintain or service the buildings or structures or the premises, including:

      (a) Fire extinguishing equipment;

      (b) Outdoor furniture;

      (c) Floor coverings; and

      (d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

   (6) If not covered by other insurance:

      (a) Additions under construction, alterations and repairs to the buildings or structures;

      (b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures.

   b. **Business Personal Property** located in or on the buildings or structures at the described premises or in the open (or in a vehicle) within 100 feet of the buildings or structures or within 100 feet of the premises described in the Declarations, whichever distance is greater, including:

      (1) Property you own that is used in your business;

      (2) Property of others that is in your care, custody or control, except as otherwise provided in Loss Payment Property Loss Condition Paragraph **E.5.d.(3)(b)**;

      (3) Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

         (a) Made a part of the building or structure you occupy but do not own; and

         (b) You acquired or made at your expense but cannot legally remove;

      (4) Leased personal property which you have a contractual responsibility to insure, unless otherwise provided for under Paragraph **1.b.(2)**; and

© Insurance Services Office, Inc., 2012

**(5)** Exterior building glass, if you are a tenant and no Limit Of Insurance is shown in the Declarations for Building property. The glass must be owned by you or in your care, custody or control.

**2. Property Not Covered**

Covered Property does not include:

**a.** Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

**b.** "Money" or "securities" except as provided in the:

**(1)** Money And Securities Optional Coverage; or

**(2)** Employee Dishonesty Optional Coverage;

**c.** Contraband, or property in the course of illegal transportation or trade;

**d.** Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**e.** Outdoor fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants (other than trees, shrubs or plants which are part of a vegetated roof), all except as provided in the:

**(1)** Outdoor Property Coverage Extension; or

**(2)** Outdoor Signs Optional Coverage;

**f.** Watercraft (including motors, equipment and accessories) while afloat;

**g.** Accounts, bills, food stamps, other evidences of debt, accounts receivable or "valuable papers and records"; except as otherwise provided in this policy;

**h.** "Computer(s)" which are permanently installed or designed to be permanently installed in any aircraft, watercraft, motortruck or other vehicle subject to motor vehicle registration. This paragraph does not apply to "computer(s)" while held as "stock";

**i.** "Electronic data", except as provided under Additional Coverages – Electronic Data. This Paragraph **i.** does not apply to your "stock" of prepackaged software or to "electronic data" which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system; or

**j.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings.

**3. Covered Causes Of Loss**

Direct physical loss unless the loss is excluded or limited under Section I – Property.

**4. Limitations**

**a.** We will not pay for loss of or damage to:

**(1)** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**(2)** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**(3)** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to the Optional Coverage for Money and Securities.

**(4)** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

**(5)** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(a)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

    © Insurance Services Office, Inc., 2012

(b) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

(6) Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

(a) Dampness or dryness of atmosphere or of soil supporting the vegetation;

(b) Changes in or extremes of temperature;

(c) Disease;

(d) Frost or hail; or

(e) Rain, snow, ice or sleet.

b. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

(1) Animals, and then only if they are killed or their destruction is made necessary.

(2) Fragile articles such as glassware, statuary, marble, chinaware and porcelain, if broken. This restriction does not apply to:

(a) Glass that is part of the exterior or interior of a building or structure;

(b) Containers of property held for sale; or

(c) Photographic or scientific instrument lenses.

c. For loss or damage by theft, the following types of property are covered only up to the limits shown (unless a higher Limit Of Insurance is shown in the Declarations):

(1) $2,500 for furs, fur garments and garments trimmed with fur.

(2) $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

(3) $2,500 for patterns, dies, molds and forms.

5. **Additional Coverages**

a. **Debris Removal**

(1) Subject to Paragraphs **(2)**, **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

(2) Debris Removal does not apply to costs to:

(a) Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

(b) Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

(c) Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

(d) Remove property of others of a type that would not be Covered Property under this policy;

(e) Remove deposits of mud or earth from the grounds of the described premises;

(f) Extract "pollutants" from land or water; or

(g) Remove, restore or replace polluted land or water.

(3) Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

(a) The most that we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

BUSINESSOWNERS
BP 01 32 03 20

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VIRGINIA CHANGES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A. Section I – Property** is amended as follows:

1. The **Fire Department Service Charge** Additional Coverage is replaced by the following:

   **Fire Department Service Charge**

   **a.** When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $2,500 for service at each premises described in the Declarations, unless a different limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

   This Additional Coverage applies to your liability for fire department service charges:

   **(1)** Assumed by contract or agreement prior to loss; or

   **(2)** Required by local ordinance.

   **b.** If the fire department service charge is not covered under the terms of Paragraph **a.,** then the following applies:

   When a volunteer fire department is called to save or protect the Covered Property from a Covered Cause of Loss, we will pay the amount billed to you, up to $250, unless a different limit is shown in the Declarations for volunteer fire department service charges.

   This Additional Coverage applies to your liability for service charges billed to you by a volunteer fire department, provided that:

   **(1)** The volunteer fire department is not fully funded by real estate taxes or other property taxes; and

   **(2)** The service charge is not made in response to a call outside of the volunteer fire department's fire protection district, city or municipality pursuant to a contract.

   **c.** No deductible applies to this Additional Coverage.

2. Paragraph **E.2. Appraisal** Property Loss Condition is replaced by the following:

   **2. Appraisal**

   If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. You and we must notify the other of the appraiser selected within 20 days of the written demand for appraisal. The two appraisers will select an umpire. If the appraisers do not agree on the selection of an umpire within 15 days, the insured or the insurer may apply in writing, for the appointment of an umpire, to the judge of the circuit court of the county or city in which the damaged or destroyed property was located at the time of loss. The appraisers will state separately the value of the property and amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss. Any outcome of the appraisal will be binding on both parties. If you make a written demand for an appraisal of the loss, each party will:

   **a.** Pay its own appraiser; and

   **b.** Bear the other expenses of the appraisal and umpire equally.

   However, if we make written demand for an appraisal of the loss, we will reimburse you for the reasonable cost of your chosen appraiser and for your portion of the cost of the umpire.

   If there is an appraisal, we will still retain our right to deny the claim.

 © Insurance Services Office, Inc., 2019

3. Paragraph **E.3. Duties In The Event Of Loss Or Damage** Property Loss Condition is amended as follows:

Paragraph **a.(1)** does not apply.

B. Paragraph **B.1.f.(1)(a)(i)** under Paragraph **B. Exclusions** of **Section II – Liability** is replaced by the following:

**(i)** "Bodily injury" or "property damage" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

C. **Section III – Common Policy Conditions** is amended as follows:

1. Paragraph **A. Cancellation** is replaced by the following:

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this Policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this Policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least:

   a. 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 45 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver written notice to the first Named Insured's last mailing address known to us. If notice is mailed, it will be sent in accordance with Virginia Law.

4. Our notice will state the effective date of cancellation. The policy period will end on that date.

5. If this Policy is cancelled, we will send the first Named Insured any premium refund due. The cancellation will be effective even if we have not made or offered a refund. The following provisions govern calculation of return premium:

   a. We will compute return premium pro rata and round to the next higher whole dollar when this Policy is cancelled:

      (1) At our request;

      (2) Because you no longer have a financial or insurable interest in the property or business operation that is the subject of insurance;

      (3) And rewritten by us or a member of our company group; or

      (4) After the first year, if it is a prepaid policy written for a term of more than one year.

   b. When this Policy is cancelled at your request (except when Paragraph **a.(2)**, **a.(3)** or **a.(4)** applies), we will return 90% of the pro rata unearned premium, rounded to the next higher whole dollar. However, when such cancellation takes place during the first year of a multiyear prepaid policy, we will return the full annual premium for the subsequent years. In addition, earned premium will not be less than our policywriting minimum premium.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

2. Paragraph **1.** of **H. Other Insurance** is replaced by the following:

1. If there is other insurance covering the same loss or damage, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Policy bears to the Limits of Insurance of all insurance covering on the same basis.

   © Insurance Services Office, Inc., 2019   BP 01 32 03 20



V I R G I N I A:

IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND


GOLDEN FOODS MARKET, INC.,

       Plaintiff,

v.                         CASE NO.:  CL26000208-00

BENCHMARK INSURANCE COMPANY
and COTERIE INSURANCE AGENCY,
LLC,

       Defendants.

_____/

RECEIVED AND FILED
CIRCUIT COURT
2:31
FEB 10 2026
EDWARD F. JEWETT, CLERK
BY_____D.C.

## DEFENDANT BENCHMARK INSURANCE COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

COMES NOW Defendant Benchmark Insurance Company ("Benchmark"), through its undersigned counsel, and answers the Complaint filed by the plaintiff, Golden Foods Market, Inc. ("Golden"), as follows:

### PARTIES

1.     Benchmark denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of the Complaint.

2.     Admitted.

3.     Benchmark denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3 of the Complaint.

## JURISDICTION AND VENUE

4.      Paragraph 4 of the Complaint contains a legal conclusion to which no response is required.  To the extent that a response is required, Benchmark admits that this Court has subject matter jurisdiction over this action.

5.      Paragraph 5 of the Complaint contains a legal conclusion to which no response is required.  To the extent that a response is required, Benchmark admits that this action is properly venued in this Court.  Benchmark denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 5 of the Complaint.

## FACTUAL BACKGROUND

6.      Paragraph 6 of the Complaint contains a characterization of this action to which no response is required.  To the extent that a response is required, Benchmark admits that this action purports to claim breach of contract with respect to insurance policy number CBB-00048499-01 (the "Policy"), which was issued by Benchmark to Golden.  Benchmark denies the remaining allegations contained in Paragraph 6 of the Complaint.  By way of further response, Benchmark denies that Golden is entitled to any of the relief sought in this action.

7.      Benchmark admits that the operative dates of the Policy were September 14, 2023 through September 14, 2024.  Benchmark denies the allegations of Paragraph 7 of the Complaint to the extent they suggest anything other than the correct operative dates of the Policy, as specified herein.

8.      Admitted.

2

9.      Benchmark denies the allegations contained in Paragraph 9 of the Complaint and refers Golden to the Policy for all its terms, coverages, conditions, limitations, exclusions, and other provisions, as the Policy speaks for itself.

10.     Benchmark admits that the Policy provided insurance coverage for certain property located at 1401 Chestnut St., Richmond, VA 23222-5124 (the "Insured Premises"), subject to its terms, coverages, conditions, limitations, exclusions, and other provisions.

11.     Benchmark denies the allegations contained in Paragraph 11 of the Complaint.

12.     Benchmark admits that Golden reported the subject water infiltration claim relating to a purported storm (the "Storm Claim") and sought coverage under the Policy. The remaining allegations contained in Paragraph 12 of the Complaint call for a legal conclusion with respect to the timeliness of Golden's reporting of the Storm Claim, to which no response is required. To the extent that a response is required, Benchmark denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 12 of the Complaint.

13.     Benchmark denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 of the Complaint.

14.     Benchmark admits that on or about May 13, 2023, Coterie Insurance Agency, LLC ("Coterie") sent a letter to Golden discussing Benchmark's coverage disclaimer with respect to the Claim. Benchmark denies the remaining allegations contained in Paragraph 14 of the Complaint.

15.     Benchmark denies the allegations contained in Paragraph 15 of the Complaint.

16.     Benchmark denies the allegations contained in Paragraph 16 of the Complaint.

17.     Benchmark denies the allegations contained in Paragraph 17 of the Complaint.

3

18.    Benchmark denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 of the Complaint.

19.    Benchmark denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 of the Complaint.

20.    Benchmark denies the allegations contained in Paragraph 20 of the Complaint and refers Golden to the Policy for all its terms, coverages, conditions, limitations, exclusions, and other provisions, as the Policy speaks for itself.

21.    Benchmark denies the allegations contained in Paragraph 21 of the Complaint.

22.    Benchmark denies the allegations contained in Paragraph 22 of the Complaint.

23.    Benchmark denies the allegations contained in Paragraph 23 of the Complaint.

<u>The Insured is Entitled to Coverage for the Storm Claim</u>

24.    Benchmark admits that it issued the Policy to Golden and that the Policy was in effect on February 22, 2024, i.e., the reported date of the Storm Claim.  Benchmark denies the remaining allegations contained in Paragraph 24 of the Complaint.

25.    Benchmark admits that premium for the Policy was paid by, or on behalf of, Golden.    Benchmark denies the remaining allegations contained in Paragraph 25 of the Complaint.

26.    Benchmark denies the allegations contained in Paragraph 26 of the Complaint and refers Golden to the Policy for all its terms, coverages, conditions, limitations, exclusions, and other provisions, as the Policy speaks for itself.

27.    Benchmark denies the allegations contained in Paragraph 27 of the Complaint and refers Golden to the Policy for all its terms, coverages, conditions, limitations, exclusions, and other provisions, as the Policy speaks for itself.

4

28.    Benchmark denies the allegations contained in Paragraph 28 of the Complaint.

<u>The Insured is Entitled to Coverage for the Fire Claim</u>

29.    Benchmark denies the allegations contained in Paragraph 29 of the Complaint.

30.    Benchmark denies the allegations contained in Paragraph 30 of the Complaint.

31.    Benchmark denies the allegations contained in Paragraph 31 of the Complaint.

32.    Benchmark denies the allegations contained in Paragraph 32 of the Complaint concerning the allegation that it did not properly notice the cancellation and nonrenewal of the Policy.    Benchmark denies knowledge or information sufficient to form a belief as to the remainder of the allegations contained in Paragraph 32 of the Complaint.

33.    Benchmark denies the allegations contained in Paragraph 33 of the Complaint.

34.    Benchmark denies the allegations contained in Paragraph 34 of the Complaint.

## COUNT 1:  BREACH OF CONTRACT

35.    Benchmark repeats and realleges its responses to Paragraphs 1 through 34 of the Complaint as if fully set forth herein.

36.    Benchmark admits that the Policy is an enforceable contract between itself and Golden.    Benchmark denies the remaining allegations contained in Paragraph 36 of the Complaint.

37.    Benchmark denies the allegations contained in Paragraph 37 of the Complaint.

38.    Benchmark denies the allegations contained in Paragraph 38 of the Complaint.

39.    Benchmark denies the allegations contained in Paragraph 39 of the Complaint.

40.    Benchmark denies the allegations contained in Paragraph 40 of the Complaint.

41.    Benchmark denies the allegations contained in Paragraph 41 of the Complaint.

42.    Benchmark denies the allegations contained in Paragraph 42 of the Complaint.

43.    Benchmark denies the allegations contained in Paragraph 43 of the Complaint.

44.    Benchmark denies the allegations contained in Paragraph 44 of the Complaint.

45.    Paragraph 45 of the Complaint contains a legal conclusion, to which no response is required.   To the extent that a response is required, Benchmark denies the allegations contained in Paragraph 45 of the Complaint.

## GENERAL DENIAL

Benchmark denies each and every allegation in the Complaint not specifically admitted to above and demands strict proof thereof.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

The Policy's Businessowners Coverage Form (BP 00 03 07 13) states in part:

**A.    Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1.    Covered Property**

Covered Property includes Buildings as described under Paragraph **a.** below, Business Personal Property as described under Paragraph **b.** below, or both, depending on whether a Limit Of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under Paragraph **2.** Property Not Covered.

As confirmed by Benchmark's investigation and adjustment of the Storm Claim and discussed further below in the following affirmative defenses, in connection with this action, Golden is seeking coverage for loss and/or damage to property that does not qualify as Covered Property and/or was not the result of direct physical loss or damage resulting from a Covered

Cause of Loss under the Policy. There is no coverage under the Policy for loss and/or damage to the Insured Premises that was not the result of direct physical loss or damage to Covered Property from a Covered Cause of Loss, as per the above-cited insuring agreement.

## SECOND AFFIRMATIVE DEFENSE

The Policy's Businessowners Coverage Form (BP 00 03 07 13) states in part:

**B.**   **Exclusions**

**1.**   We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

   **a.**   **Ordinance Or Law**

      **(1)**   The enforcement of or compliance with any ordinance or law:

         **(a)**   Regulating the construction, use or repair of any property; or

         **(b)**   Requiring the tearing down of any property, including the cost of removing its debris.

      **(2)**   This exclusion, Ordinance Or Law, applies whether the loss results from:

         **(a)**   An ordinance or law that is enforced even if the property has not been damaged; or

         **(b)**   The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

7

In connection with this action, Golden is seeking to recover insurance proceeds under the Policy for, *inter alia*, costs to bring the Insured Premises up to code. There is no coverage available under the Policy for any alleged loss caused by or resulting from an ordinance or law that regulates the use or repair of property, regardless of any other cause or event that contributes concurrently or in any sequence to the loss, as per the above-cited exclusion.

### THIRD AFFIRMATIVE DEFENSE

The Policy's Businessowners Coverage Form (BP 00 03 07 13) states in part:

**B.    Exclusions**

*        *        *

2.    We will not pay for loss or damage caused by or resulting from any of the following:

*        *        *

**b.    Consequential Losses**

Delay, loss of use or loss of market.

*        *        *

The loss and/or damage at issue in the Complaint was allegedly caused, in whole or in part, by consequential losses following the reported Storm Claim at the Insured Premises. There is no coverage available under the Policy to the extent that the loss and/or damage at issue in this action was caused by delay, loss of use, loss of market, or any other consequential loss impacting the Insured Premises, as per the above-cited exclusion.

## FOURTH AFFIRMATIVE DEFENSE

The Policy's Businessowners Coverage Form (BP 00 03 07 13) states in part:

**B.**   **Exclusions**

    **2.**   We will not pay for loss or damage caused by or resulting from any of the following:

*      *      *

        **k.**   **Neglect**

            Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

To the extent that the loss and/or damage at issue in the Complaint was caused, in whole or in part, by Golden's failure to use all reasonable means to save and preserve property from further damage at and after the time of loss, there is no coverage available under the Policy, as per the above-cited exclusion.

## FIFTH AFFIRMATIVE DEFENSE

The Policy's Businessowners Coverage Form (BP 00 03 07 13) states in part:

**B.**   **Exclusions**

    **2.**   We will not pay for loss or damage caused by or resulting from any of the following:

*      *      *

        **l.**   **Other Types of Loss**

            **(1)**   Wear and tear;

            **(2)**   Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

9

\*          \*          \*

(4)     Settling, cracking, shrinking or expansion;

\*          \*          \*

(6)     Mechanical breakdown, including rupture or bursting caused by centrifugal force.

\*          \*          \*

Based upon Benchmark's investigation of the Storm Claim, it confirmed that the loss and/or damage at issue in the Complaint was caused, in whole or in part, by one or more of the above-cited types of loss.  There is no coverage available under the Policy for any loss or damage caused, in whole or in part, by any of the above-cited types of loss, as per the above-cited exclusion.

### SIXTH AFFIRMATIVE DEFENSE

The Policy's Businessowners Coverage Form (BP 00 03 07 13) states in part:

**B.      Exclusions**

3.      We will not pay for loss or damage caused by or resulting from any of the following Paragraphs **a.** through **c.** But if an excluded cause of loss that is listed in Paragraphs **a.** through **c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

\*          \*          \*

**b.      Acts Or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

10

To the extent that the loss and/or damage at issue in the Complaint was caused, in whole or in part, by Golden's failure to use all reasonable means to save and preserve property from further damage at and after the time of loss, there is no coverage available under the Policy, as per the above-cited exclusion.

## SEVENTH AFFIRMATIVE DEFENSE

The Policy's Businessowners Coverage Form (BP 00 03 07 13) states in part:

**B.    Exclusions**

   3.    We will not pay for loss or damage caused by or resulting from any of the following Paragraphs **a.** through **c.** But if an excluded cause of loss that is listed in Paragraphs **a.** through **c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

*        *        *

   **c.    Negligent Work**

   Faulty, inadequate or defective:

   **(1)**    Planning, zoning, development, surveying, siting;

   **(2)**    Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

   **(3)**    Materials used in repair, construction, renovation or remodeling; or

   **(4)**    Maintenance;

   of part or all of any property on or off the described premises.

Based upon Benchmark's investigation of the Storm Claim, it confirmed that the loss and/or damage at issue in the Complaint was caused, in whole or in part, by one or more of the

11

above-referenced causes of loss. There is no coverage available under the Policy for any loss or damage caused, in whole or in part, by any of the above-cited causes of loss, as per the above-cited exclusion.

## EIGHTH AFFIRMATIVE DEFENSE

The Policy's Businessowners Coverage Form (BP 00 03 07 13) states in part:

E.      **Property Loss Conditions**

*          *          *

3.      **Duties In The Event Of Loss Or Damage**

     a.      You must see that the following are done in the event of loss or damage to Covered Property:

         (1)      Notify the police if a law may have been broken.

         (2)      Give us prompt notice of the loss or damage. Include a description of the property involved.

         (3)      As soon as possible, give us a description of how, when and where the loss or damage occurred.

         (4)      Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limits of Insurance of Section **I** – Property. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

         (5)      At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6)   As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7)   Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8)   Cooperate with us in the investigation or settlement of the claim.

(9)   Resume all or part of your "operations" as quickly as possible.

In the Complaint, Golden asserts a right to recover insurance proceeds under the Policy for alleged loss and/or damage to the Insured Premises relating to a purported fire loss that occurred on or about October 27, 2024 (the "Fire Claim"). However, Golden categorically failed and refused to fully comply with its post-loss duties under the Policy, including its failure to report the Fire Claim to Benchmark or its third-party claims administrator, Coterie. In this same vein, Golden also failed and refused to provide Benchmark with any documents or information relating to the alleged Fire Claim. Accordingly, Golden is not entitled to coverage under the Policy for any alleged loss or damage attributable to the Fire Claim due to Golden's noncompliance with its post-loss duties.

13

## NINTH AFFIRMATIVE DEFENSE

The Policy's Businessowners Coverage Form (BP 00 03 07 13) states in part:

**F.**    **Property General Conditions**

*        *        *

    **4.**    **Policy Period, Coverage Territory**

        Under Section I – Property:

        **a.**    We cover loss or damage commencing:

            **(1)**    During the policy period shown in the Declarations; and

            **(2)**    Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

*        *        *

The Businessowners Policy Declarations (CTB CW NONCDEC 07 20) states that the policy period for the Policy is September 14, 2023 to September 14, 2024. In connection with this action, Golden is seeking insurance proceeds under the Policy for the Fire Claim, which allegedly occurred on October 27, 2024, i.e., approximately 6 weeks after the Policy expired. There is no coverage under the Policy for any loss or damage that did not occur during the policy period, as per the above-cited condition.

## TENTH AFFIRMATIVE DEFENSE

The Policy's Businessowners Coverage Form (BP 00 03 07 13) states in part:

**E.      Property Loss Conditions**

        &ast;   &ast;   &ast;

  **4.      Legal Action Against Us**

    No one may bring a legal action against us under this insurance unless:

    **a.**  There has been full compliance with all of the terms of this insurance; and

    **b.**  The action is brought within two years the date on which the direct physical loss or damage occurred.

        &ast;   &ast;   &ast;

For the reasons set forth in the Affirmative Defenses cited above, including the Eighth and Ninth Affirmative Defenses, Golden has failed to fully comply with all of the applicable loss conditions under the Policy with respect to the alleged Fire Claim.  Due to Golden's failure and refusal to fully comply with all of the applicable loss conditions, Golden is barred from bringing legal action against Benchmark under the Policy with respect to the Fire Claim, as per the above-cited condition.

## ELEVENTH AFFIRMATIVE DEFENSE

The Policy's Businessowners Coverage Form (BP 00 03 07 13) states in part:

**SECTION III – COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I – PROPERTY AND SECTION II – LIABILITY)**

**H.    Other Insurance**

    **1.**    If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance of Section **I** – Property.

    **2.**    Business Liability Coverage is excess over:

        **a.**    Any other insurance that insures for direct physical loss or damage; or

        **b.**    Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured.

    **3.**    When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

Upon information and belief, Golden is the landlord to multiple tenants at the Insured Premises. Upon further information and belief, the tenants carried property insurance which may have provided coverage for some, or all, of Golden's alleged losses at issue in this action. Pursuant to the above-cited condition, the Policy would be excess to those other insurers and the amount of money owed by Benchmark, if any, must be reduced accordingly.

16

## TWELFTH AFFIRMATIVE DEFENSE

The Complaint contains multiple allegations of alleged bad faith conduct. However, there is no cause of action asserted for bad faith, and nor could there be, against Benchmark. As such, the Complaint fails to state a viable cause of action upon which relief can be granted with respect to any and all allegations of bad faith and Benchmark is entitled to judgment on this basis.

## THIRTEENTH AFFIRMATIVE DEFENSE

Benchmark alleges that the incident referred to in the Complaint, and all alleged losses and damages, if any, resulting therefrom, were caused by the acts or omissions of individuals over whom Benchmark had no control.

## FOURTEENTH AFFIRMATIVE DEFENSE

Benchmark states that the loss and damage at issue in the Complaint allegedly suffered by Golden were caused, in whole or in part, or were contributed to, by reason of the negligence of Golden.

## FIFTEENTH AFFIRMATIVE DEFENSE

Golden's claims are barred, in whole or in part, to the extent that it failed to exercise reasonable diligence to mitigate its losses and damages. The losses and damages claimed by Golden in the Complaint could have been avoided or mitigated by due diligence on its part.

## SIXTEENTH AFFIRMATIVE DEFENSE

Golden's claims are barred, in whole or in part, for failure to meet all conditions precedent.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Golden's claims are barred, in whole or in part, for failure to state facts sufficient to constitute a viable cause of action upon which relief can be granted.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Golden's claims are barred, in whole or in part, by the terms, conditions, limitations, exclusions, or other provisions of the Policy, to the extent not otherwise referenced above.

## NINETEENTH AFFIRMATIVE DEFENSE

Golden's claims are barred, in whole or in part, to the extent that it breached the duty of good faith and fair dealing by failing and/or refusing to promptly and accurately furnish to Benchmark all information and evidence reasonably necessary to evaluate the full extent of the claim, including all categories of claimed damage and losses being asserted in this action.

## TWENTIETH AFFIRMATIVE DEFENSE

The loss and/or damage at issue in the Complaint is barred, in whole or in part, by the equitable doctrines of laches, waiver, estoppel, and/or unclean hands.  Specifically, upon information and belief, Golden failed to use all reasonable means to save and preserve property

18

from further damage at and after the actual time of loss and failed to timely report all alleged loss or damage at issue in the Complaint.

Benchmark reserves the right to assert additional defenses and to amend its Answer as further information concerning Golden's claim is developed through discovery or otherwise.

**WHEREFORE** Defendant Benchmark Insurance Company demands judgment dismissing the Complaint and awarding it costs and disbursements incurred in this action and such other further relief as the Court deems necessary and proper.

BENCHMARK INSURANCE COMPANY

By:

Robert S. Reverski, Jr. (VSB No. 42383)
Midkiff, Muncie & Ross, P.C.
300 Arboretum Place
Suite 420
Richmond, Virginia 23236
804.560.9600 – Telephone
804.560.5997 – Facsimile
rreverski@midkifflaw.com
*Counsel for Defendant Benchmark Ins. Co.*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 10th day of February, 2026, a true and accurate photocopy of the foregoing document was transmitted by email and served by first class mail, postage prepaid, to the following counsel of record:

William M. Tunner, Esquire
Daniel-Lester S. Edwards, Esquire
ThompsonMcMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, Virginia  23219
wtunner@t-mlaw.com
dledwards@t-mlaw.com
*Counsel for Plaintiff*

Robert S. Reverski, Jr.

20



VIRGINIA:

IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

GOLDEN FOODS MARKET, INC.,

     Plaintiff,

v.                         CASE NO.:  CL26000208-00

BENCHMARK INSURANCE COMPANY
and COTERIE INSURANCE AGENCY,
LLC,

     Defendants.

_____/

RECEIVED AND FILED
CIRCUIT COURT
2:31
FEB 1 0 2026
EDWARD F. JEWETT, CLERK
BY_____D.C.

## DEFENDANT COTERIE INSURANCE AGENCY, LLC'S DEMURRER TO PLAINTIFF'S COMPLAINT

COMES NOW Defendant Coterie Insurance Agency, LLC ("Coterie"), through its undersigned counsel, and submits its Demurrer to the Complaint filed by plaintiff, Golden Foods Market, Inc. ("Golden"), as follows:

1.    The principles applicable to a trial court's consideration of a demurrer are well established:

> A demurrer tests the legal sufficiency of a motion for judgment and admits the truth of all material facts that are properly pleaded. ... The facts admitted are those expressly alleged, those that are impliedly alleged, and those that may be fairly and justly inferred from the facts alleged. ... The trial court is not permitted on demurrer to evaluate and decide the merits of the allegations set forth in a [motion for judgment], but only may determine whether the factual allegations of the [motion] are sufficient to state a cause of action.

*Harris v. Kreutzer*, 271 Va. 188, 195, 624 S.E.2d 24 (2006) (citations omitted); *accord, Board of Supervisors of Fluvanna County v. Davenport & Co. LLC*, 285 Va. 580, 585, 742 S.E.2d 59 (2013). "A demurrer, however, does not admit inferences or conclusions from facts not stated," *Friends of the Rappahannock v. Caroline County Board of Supervisors*, 286 Va. 38, 44,743

S.E.2d 132 (2013) (citations omitted), nor does it admit the correctness of the pleader's conclusions of law, *Bell v. Saunders*, 278 Va. 49, 53, 677 S.E.2d 39 (2009).

2.      In this action, Golden fails to state a viable cause of action against Coterie for breach of contract.  Significantly, the facts alleged in the Complaint fail to establish that Coterie is a party to the contract at issue in this action, i.e., insurance policy number CBB-00048499-01 (the "Policy") issued by Benchmark Insurance Company ("Benchmark") to Golden.  A true and correct copy of the Policy is attached hereto.

3.      Paragraph 8 of the Complaint plainly concedes that Coterie was not the underwriter to the Policy but, rather, was "retained … to serve as the program and claims administrator under the Policy."

4.      Indeed, the Declarations pages of the Policy leave no doubt that Coterie is merely a third-party retained by Benchmark.  For example, the first page of the attached Policy, form no. COTERIE CW CLAIM 11 20, plainly states that "claims are serviced by Coterie Insurance, on behalf of Benchmark Insurance Company as the underwriter and Coterie Insurance Agency LLC, as the agent."  The second page of the attached Policy, which is also attached as Exhibit "A" to the Complaint, further confirms that coverage afforded by the Policy is provided by Benchmark. The third page of the attached Policy, which is also attached as Exhibit "A" to the Complaint, further notes that Benchmark is the underwriting company and Coterie is merely the program administrator.

5.      It is axiomatic under Virginia law that a plaintiff cannot maintain a viable cause of action for breach of contract against a defendant that is not a party to the contract at issue. The Policy is a contract between Benchmark and Golden.  Since Coterie is not a party to the

contract, the Complaint fails to assert a viable cause of action against it, and Coterie specifically demurrers against the Complaint on this basis.

6.      Coterie further demurrers on the grounds that there is no privity of contract between itself and Golden, which further invalidates the sufficiency of the Complaint.

7.      Coterie further demurrers on the grounds that the claims asserted against it in the Complaint are barred by the economic loss doctrine.

**WHEREFORE** Defendant Coterie Insurance Agency, LLC, states that, for the reasons cited herein, Plaintiff has failed to allege facts upon which relief can be granted; denies that Plaintiff is entitled to the relief prayed for in the Complaint; and prays that this Demurrer be sustained and that this action be dismissed as against Coterie, and that Coterie may recover all costs expended in this action.

COTERIE INSURANCE AGENCY

By:

Robert S. Reverski, Jr. (VSB No. 42383)
Midkiff, Muncie & Ross, P.C.
300 Arboretum Place
Suite 420
Richmond, Virginia  23236
804.560.9600 – Telephone
804.560.5997 – Facsimile
rreverski@midkifflaw.com
*Counsel for Defendant Coterie Ins. Agency*

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on this 10th day of February, 2026, a true and accurate photocopy of the foregoing document was transmitted by email and served by first class mail, postage prepaid, to the following counsel of record:

      William M. Tunner, Esquire
      Daniel-Lester S. Edwards, Esquire
      ThompsonMcMullan, P.C.
      100 Shockoe Slip, 3rd Floor
      Richmond, Virginia 23219
      wtunner@t-mlaw.com
      dledwards@t-mlaw.com
      *Counsel for Plaintiff*

Robert S. Reverski, Jr.